UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                     :

ANN GREENBERG,                   :

                               :

             Plaintiff,        :

                               :             21 Civ. 7222 (JPC)

        -v-                  :

                               :             <u>OPINION AND ORDER</u>

KOLMAR LABORATORIES, INC. *et al.*,    :

                               :

            Defendants.      :

                               :
---------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Ann Greenberg initiated this action on July 29, 2021 by filing a Complaint against Kolmar

Laboratories, Inc. ("Kolmar") in the Supreme Court of the State of New York, New York County.

Dkt. 1-1 at 4. The next day, Greenberg amended her Complaint, adding as defendants Johnson &

Johnson and Johnson & Johnson Consumer Inc. (the "Johnson & Johnson Defendants"). Dkt. 1-

1 at 19. Greenberg brings claims related to her exposure to asbestos-containing talc products in a

product known as Johnson's Baby Powder. *Id.* at 4-5 ¶ 5; *see also id.* at 19. With respect to

Kolmar, Greenberg seeks to hold the company liable under theories of negligence and strict

liability in connection with its alleged "tortious conduct through the manufacture, design, testing,

supply, labeling and distribution of asbestos-containing talc products to which [Greenberg] was

exposed." *Id.* at 4-5 ¶ 5. Greenberg further alleges that Kolmar learned of the presence of asbestos

in the talc products and engaged in conduct to conceal the dangers of asbestos contamination in

talc. *Id.* at 5 ¶¶ 6-7.

      The Johnson & Johnson Defendants removed this action to federal court in this District on

August 27, 2021, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and

asserting their position that Kolmar was fraudulently joined in the action. Dkt. 1 at 1, 3. Greenberg then filed a motion to remand and for attorneys' fees on September 14, 2021. Dkts. 10, 11, 12 ("Motion"). Greenberg argues that Kolmar was not fraudulently joined, and that because Kolmar is a citizen of the State of New York, removal from New York state court on diversity grounds was improper under 28 U.S.C. § 1441(b)(2). Motion at 4-8; *see* 28 U.S.C. § 1441(b)(2). The Johnson & Johnson Defendants filed their opposition to remand on September 28, 2021. Dkts. 15 ("Opposition"), 16. Greenberg filed her reply on October 5, 2021. Dkts. 19, 20 ("Reply"). The Court then granted the Johnson & Johnson Defendants' request to file a sur-reply on November 29, 2021. Dkt. 25 at 3. Before that sur-reply could be filed, however, the Court stayed this case in light of a bankruptcy proceeding involving a subsidiary of Johnson & Johnson. Dkt. 30. That stay was lifted on May 9, 2023, Dkt. 48, and the Johnson & Johnson Defendants filed their sur-reply on May 22, 2023, Dkt. 49.[1]

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action to the United States District Court in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." The district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as

---

[1] On August 3, 2023, the Johnson & Johnson Defendants filed a suggestion of Greenberg's death pursuant to Federal Rule of Civil Procedure 25(a)(1). Dkt. 51. Pursuant to that Rule, "[a] motion for substitution may be made by any party or by the decedent's successor or representative," and if such a "motion is not made within 90 days after service of a statement noting the death, the action against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1). On August 10, 2023, the Court ordered Greenberg's counsel and the Johnson & Johnson Defendants to provide any authority for the proposition that Greenberg's death deprived the Court of jurisdiction to resolve the motion to remand. Dkt. 53. Those letters were filed on August 17, 2023, Dkts. 54-55, and neither provided any such authority. If removal in this case was improper, the Court determines that any motion for substitution and any other matter related to Greenberg's death which may impact the merits of this case should not be heard in this forum. Therefore, the Court will address the motion to remand, which was fully briefed as to Greenberg prior to her death.

"all civil actions where the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between . . . citizens of different States," *id.* § 1332(a).  As stated, the Johnson & Johnson Defendants' removal of this action from New York state court was based on this latter, diversity jurisdiction.  *See* Dkt. 1 at 1.  The parties agree that Kolmar is a citizen of the State of New York.  *See* Dkt. 1 at 3; Motion at 1.  Title 28, United States Code, Section 1441(b)(2) bars removal of an action on the basis of diversity jurisdiction when one of the defendants is a citizen of the state in which the action had been brought.  28 U.S.C. § 1441(b)(2) ("A civil action otherwise removeable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").  The question at the heart of the current dispute is whether Kolmar is a fraudulently joined defendant in this case.  If not, section 1441(b)(2) prohibited the removal of this action; if so, removal was proper.

"A plaintiff may not defeat federal court diversity jurisdiction by improperly joining as a defendant a non-diverse party with no real connection to the controversy.  This rule is known as the doctrine of fraudulent joinder[.]"  *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010).  "Under the doctrine, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court.  The defendant bears the heavy burden of proving the circumstances by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff."  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) (citations omitted); *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998) ("In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright

fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court."); *see also Bounds*, 593 F.3d at 215.  While, as indicated by the citations above, this doctrine most often arises in the context of the joinder of a defendant that is non-diverse, meaning a citizen of the same state as the plaintiff, the parties agree it applies in the section 1441(b)(2) context as well.  *See* Motion at 4-8; Opposition at 7-8; *see also Almeciga v. Ctr. for Investigative Reporting, Inc.*, 121 F. Supp. 3d 379, 382 (S.D.N.Y. 2015) (applying the doctrine of fraudulent joinder in the section 1442(b)(2) context).

The sufficiency of a plaintiff's pleading is assessed by applying the relevant state court standards.  *See Shanahan v. Kolmar Lab'ys, Inc.*, No. 18 Civ. 8317 (JMF), 2019 WL 935164, at *1 (S.D.N.Y. Feb. 26, 2019) ("[T]he question at this stage is whether Plaintiffs' pleadings are enough to give them some possibility of success against Kolmar in the *state* court from which the action was removed and it is well established that New York's pleading standards are more lenient than the plausibility standard applicable in federal courts." (internal quotation marks and citation omitted)).  "New York requires only that a complaint plead facts with sufficient particularity to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." *Id.* (internal quotation marks omitted).  "That is, a complaint must plead facts sufficient to identify the transaction and indicate the theory of redress to enable the court to control the matter and the adversary to prepare."  *Id.*  (internal quotation marks omitted).  Moreover, unlike the usual motion to dismiss standard in federal or state court, "[a]ny possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is 'no possibility' of recovery is such a

finding warranted." *Nemazee v. Premier, Inc.*, 232 F. Supp. 2d 172, 178 (S.D.N.Y. 2002) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001)).

The Johnson & Johnson Defendants argue that "a wealth of discovery obtained since [previous cases granting motions to remand despite the Johnson & Johnson Defendants' arguments that Kolmar was improperly joined] has established the insufficiency of Plaintiff's allegations against Kolmar and answered the factual question that remained unresolved in those cases, thereby conclusively demonstrating Kolmar's immunity from liability under New York law." Opposition at 8 (internal quotation marks omitted). In particular, they make three arguments. First, they argue that Greenberg used the product at issue in this case, Johnson's Baby Powder, only before Kolmar manufactured that product. Opposition at 8-14. Second, they argue that Greenberg cannot establish that she ever used a product manufactured by Kolmar specifically. *Id.* at 14-17. And third, they argue that Kolmar is a contract and component-part manufacturer immune from liability under New York law. *Id.* at 17-21.

Starting with the first argument, the Johnson & Johnson Defendants maintain that Greenberg ceased using Johnson's Baby Powder in 1974, but Kolmar only began manufacturing that product in 1980, pointing to documentary and testimonial evidence.[2] *Id.* at 9. To support

---

[2] The Second Circuit generally states that a fraudulent joinder analysis assesses the sufficiency of the *pleadings*. *See, e.g.*, *Briarpatch Ltd., L.P.*, 373 F.3d at 302 ("Under the doctrine, courts overlook the presence of a non-diverse defendant if from the *pleadings* there is no possibility that the claims against that defendant could be asserted in state court." (emphasis added)). In resolving a motion to remand based on fraudulent joinder, however, courts in this District have most often held that the Court "is permitted to look beyond the pleadings and may review submissions from the parties such as affidavits." *Winters v. Alza Corp.*, 690 F. Supp. 2d 350, 353 n.3 (S.D.N.Y. 2010); *see also 2386 Hempstead, Inc. v. WFG Nat. Title Ins. Co.*, No. 22 Civ. 9944 (KPF), 2023 WL 2822553, at *7 n.6 (S.D.N.Y. Apr. 7, 2023). *But see Resnick v. Rite Aid of N.Y., Inc.*, No. 21 Civ. 4609 (JSR), 2021 WL 2941119, at *3 (S.D.N.Y. July 12, 2021) (holding that the court could not consider deposition testimony outside the pleadings in its fraudulent joinder analysis).

their contention that Greenberg last used Johnson's Baby Powder in 1974, the Johnson & Johnson Defendants point to Greenberg's interrogatory response that she "was regularly and frequently exposed to respirable asbestos fibers from Johnson & Johnson's Baby Powder from approximately 1944 to 1974." Dkt. 16-1 ¶ A.20; *see* Opposition at 8.  Greenberg, however, contends that Kolmar actually began manufacturing Johnson's Baby Powder as early as 1965, Motion at 8-9, and in her reply argues that she continued to use Johnson's Baby Powder after 1980, attaching as support the transcript of her September 29, 2021 deposition at which she testified that she used the product until 1984 or 1985, Reply at 5-6; Dkt. 19-1 at 29:13-16 ("Q:  And you told us earlier that the last— the year that you approximately used Johnson's Baby Powder was in about 1984 or '85?  A:  On myself yes, that's true.").  Greenberg's deposition testimony alone creates a factual dispute regarding the date when she ceased using Johnson's Baby Powder.  True, this testimony was not produced until Greenberg filed her reply brief, but the deposition was not taken until September 29, 2021, after the Johnson & Johnson Defendants had filed their opposition to remand.  *See* Dkt. 19-1.  Nor is the fact that Greenberg's recollection at her deposition of when she last used Johnson's Baby Powder different from her prior interrogatory response so incredible as to require the Court to disregard that testimony.  The events in question occurred decades ago, and the very purpose of discovery is to establish a full factual record.  It should be expected that in the course of discovery new evidentiary matter or facts might be uncovered.  Moreover, the Johnson & Johnson Defendants sought and were provided an opportunity to file a sur-reply to address factual assertions presented for the first time in Greenberg's reply.  *See* Dkt. 21 at 1 (October 5, 2021 letter from the Johnson & Johnson Defendants, filed after Greenberg's reply, stating "if the Court wishes to consider Plaintiff's new factual assertions and arguments, the J&J Defendants respectfully request that they be permitted to submit a sur-reply addressing them"); Dkt. 25 at 3 (granting leave

for the Johnson & Johnson Defendants to file a sur-reply).  The Court therefore exercises its discretion to consider this evidence and determines that there is a factual dispute regarding the timeframe of Greenberg's use of Johnson's Baby Powder.  *See Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venezuela*, 341 F. App'x 722, 724 (2d Cir. 2009) ("A district court enjoys broad discretion . . . (2) to rely on evidence submitted with the reply papers.").

There also is a factual dispute regarding the date when Kolmar began manufacturing Johnson's Baby Powder.  A document from March 23, 1966 from Richard L. Kole, President of Kolmar Laboratories, Inc., to someone named T.F. Gorman in the Johnson & Johnson Consumer Research Department refers to "25M units of Johnson's Baby Dusting Powder."  Dkt. 11-8.  The Johnson & Johnson Defendants argue that this letter references only Baby *Dusting* Powder, a different product than Johnson's Baby Powder, but they provide no support for that assertion.  Opposition at 10.  Given the procedural posture of this case, where all factual ambiguities must be construed in Greenberg's favor, the Court cannot determine that there is "no possibility" of Greenberg showing that Kolmar produced Johnson's Baby Powder prior to 1974.  *Pampillonia*, 138 F.3d at 461.

Second, the Johnson & Johnson Defendants argue that Greenberg does not plausibly allege, nor can she establish, that she ever used products created specifically by Kolmar.  Opposition at 14-17.  They point to the allegations in the Complaint, incorporated by the Amended Complaint, Dkt. 1-1 at 19, that Kolmar "engaged in tortious conduct through the manufacture, design, testing, supply, labeling and distribution of asbestos-containing talc products to which [Greenberg] was exposed to [sic] in New York City and other locations," and that Kolmar would have learned of the asbestos contamination in talc products as a result of its membership in the Cosmetic, Toiletry, and Fragrance Association, *id.* at 4-5, and contend that these allegations are too conclusory to make

out a cause of action against Kolmar.  *See* Opposition at 15.  Another judge in this District, the Honorable Jesse M. Furman, held that nearly identical allegations survived a fraudulent joinder accusation brought by the very same defendants.  *See Shanahan*, 2019 WL 935164, at *1 (holding that an allegation that "Kolmar engaged in tortious conduct through the manufacture, design, testing, supply, labeling and distribution of asbestos-containing talc products to which [one of the plaintiffs] was exposed" was "particular enough to create at least *some* possibility that Plaintiffs could recover against Kolmar in New York's courts" (internal quotation marks omitted)).  The Johnson & Johnson Defendants resist this conclusion by arguing that the evidence shows that Kolmar "was never the exclusive—or even the primary—facility that blended and bottled [Johnson Baby Powder] over this period" and that "there is no evidence indicating *where* any Kolmar-bottled [Johnson Baby Powder] was released to the market—or *whether* any Kolmar-bottled [Johnson Baby Powder] was ever released at all."  Opposition at 16.  But while ultimately Greenberg may need to prove those facts, at the current posture it is the Johnson & Johnson Defendants who must prove that Greenberg has "no possibility" of recovering against Kolmar.  And each of the three cases cited by the Johnson & Johnson Defendants to support their argument that no evidence will support Greenberg's claims arose in a different posture.  *See In re N.Y.C. Asbestos Litig.*, 48 N.Y.S.3d 365 (1st Dep't 2017) (post-trial); *Schiraldi v. U.S. Min. Prods.*, 599 N.Y.S.2d 572 (1st Dep't 1993) (summary judgment); *Grant v. Johnson & Johnson*, No. 17 Civ. 3356 (GBD), 2017 WL 6812035, at *3 (S.D.N.Y. Dec. 19, 2017) (assessing under a different standard whether the plaintiff could add an additional defendant after removal which would destroy diversity).  Without the factual record fully developed here, the Court cannot agree with the Johnson & Johnson Defendants that there is no possibility of recovery against Kolmar.  *See Shanahan*, 2019 WL 935164, at *2 (concluding that *Grant* does not support the very argument that

the Johnson & Johnson Defendants make here in part because *Grant* arose in a different posture).

Accordingly, the Johnson & Johnson Defendants have not satisfied their burden of showing by

clear and convincing evidence that Greenberg has no possibility of establishing Kolmar's liability.

Third and finally, the Johnson & Johnson Defendants argue that Kolmar is immune from

liability under New York law as a "mere contractor."  Opposition at 17.  Once again, *Shanahan* is

instructive.  There, Judge Furman explained that "for Kolmar to prevail on the defense, a factfinder

would have to conclude that it manufactured the talc products according to someone else's 'plans

and specifications' and that those plans and specifications were not 'so apparently defective' that

an ordinarily prudent manufacturer would have been on notice of the dangerous defect. At a

minimum, the latter question remains in dispute, as Plaintiffs allege that Kolmar learned that the

talc products it manufactured were contaminated with asbestos as early as the 1970s."  *Shanahan*,

2019 WL 935164, at *2 (citation omitted); *accord LaFlair v. Johnson & Johnson*, No. 18 Civ.

1270 (BKS), 2019 WL 3454050, at *4-5 (N.D.N.Y. July 31, 2019) (same).  The Johnson &

Johnson Defendants endeavor to distance themselves from *Shanahan* and *LaFlair* by claiming that

new evidence has resolved this factual dispute.  Opposition at 17-21.  But evidence provided by

Greenberg creates a question of whether Kolmar was a member of the Cosmetic, Toiletry, and

Fragrance Association, an industry body that, according to Greenberg's proffered evidence, knew

of the risk of asbestos-tainted talc prior to or during its manufacturing of any Johnson & Johnson

product.  *See* Reply at 7-9.  There is thus at least a factual dispute as to whether any plans and

specifications provided to Kolmar were "so apparently defective that an ordinarily prudent

manufacturer would have been on notice of the dangerous defect."  *Shanahan*, 2019 WL 935164,

at *2; *accord LaFlair*, 2019 WL 93514, at *4-5 (same).  At the current procedural posture, the

existence of that factual dispute redounds to the benefit of Greenberg.   Thus, for the above reasons, the Court grants Greenberg's motion to remand.

Lastly, Greenberg requests her attorneys' fees and costs in bringing this motion.   Motion at 9-10.  Greenberg argues that the Johnson & Johnson Defendants improperly removed this action, knowing that Kolmar was a properly joined defendant.  *Id.*  Title 28, United States Code, Section 1447(c) permits a district court remanding a case to state court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal."  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Although the Court has rejected the Johnson & Johnson Defendants' arguments for removal, it cannot say that they lacked an "objectively reasonable basis for seeking removal."  *Id.*[3]  For instance, when the Johnson & Johnson Defendants removed this action, they reasonably understood that Greenberg did not use Johnson's Baby Powder subsequent to 1974 based on her interrogatory response; they did not learn of evidence of her post-1980 use of the product until the briefing of this motion.  Therefore, considering "the nature of the case [and] the circumstances of the remand," as well as "the effect on the parties," *Prescia v. U.S. Life Ins. Co.*, No. 10 Civ. 2518 (KMW), 2011 WL 70569, at *2 (S.D.N.Y. Jan. 6, 2011) (internal quotation marks omitted), the Court declines to award attorneys' fees and costs to Greenberg.  *See Shanahan*, 2019 WL 935164, at *2.

---

[3] In arguing that fees and costs are warranted, Greenberg accuses the Johnson & Johnson Defendants of removing this case "in the face of precedential rulings by this Court and the Northern District of New York," referring to the decisions in *Shanahan* and *LaFlair*.  Motion at 2.  While this Court ultimately agrees with the analyses of the judges in those cases, neither decision has precedential effect on this Court.

Having rejected the Johnson & Johnson Defendants' arguments that Kolmar was fraudulently joined, the Court determines that it lacks subject matter jurisdiction over this action and grants Greenberg's motion to remand. The Court, however, denies Greenberg's motion for attorneys' fees and costs. The Court therefore orders that this proceeding, Index No. 190148/2021, be remanded to the Supreme Court of the State of New York, New York County. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: September 15, 2023
New York, New York

JOHN P. CRONAN
United States District Judge

11